UNITED STATES *v.* RIDGEWAY.

(*Circuit Court, S. D. Georgia, W. D.* June 15, 1887.)

1. INSANITY—AS A DEFENSE—BURDEN OF PROOF.
    When a defendant sets up a plea of insanity, he assumes the burden of proof to sustain the plea.

2. SAME—EVIDENCE—ABNORMAL STRENGTH.
    The possession of spasmodic and abnormal muscular strength, coincident with great and continuous wakefulness, a deranged system, great restlessness, an abnormal bulging of the eye, with a vacant expression, are evidences of insanity.

3. SAME—MANIA.
    A party who believes that he has not slept a moment for more than eight years is suffering from a mental delusion which amounts to a mania on that subject.

4. SAME—POWER TO DISTINGUISH BETWEEN RIGHT AND WRONG.
    If one charged with crime possesses that degree of mental intelligence which enables him to distinguish between right and wrong, as to the particular matter involved in the crime for which he is on trial, he is held responsible for his action, although he may suffer from a mental aberration on other matters not connected therewith.

5. SAME—MANNER OF TESTIFYING.
    While the prisoner's manner of·testifying, his general bearing as a witness, the intelligibility and continuity of his testimony, are important matters to be considered by the jury, these are not conclusive on the question of his mental soundness.

6. JURY—PROVINCE OF—PUNISHMENT.
    The jury can have no proper concern with the character or extent of the punishment fixed by the statute.
(*Syllabus by the Court.*)

*Du Pont Guerry,* U. S. Atty., for the United States.
*Mr. Thurman,* for defendant.

SPEER, J. (*charging jury.*)   The defendant, Francis T. Ridgeway, is on his trial, charged with the offense of carrying on the business of an illicit distiller, and working in a distillery in violation of law.   It will not be necessary, in view of the simple and well-understood character of this offense, that the court should give you any definition of what is, in contemplation of the law, an illicit distillery, or what is working in such a distillery.   That you already understand.   The issue to which the instructions of the court will be directed relates to the question of the guilt or innocence of the defendant on two grounds:   (1) Did he carry on the business of an illicit distiller, or did he work in an illicit distillery, as charged in the accusation?   (2) If he did, is he a man of that degree of sanity or soundness of mind that he is legally responsible for his actions?

In this, as in all cases of accusation of crime, it is incumbent on the prosecution to prove its case to the satisfaction of the jury, and beyond a reasonable doubt.   Here the prosecution relies upon circumstantial evidence entirely, and in all cases of circumstantial evidence it is the rule that the evidence should so unerringly point to the guilt of the accused, that there will remain no reasonable hypothesis or explanation of the circumstances consistent with his innocence.   If, however, the circumstances so distinctly and necessarily point to his guilt as to leave no such reasonable hypothesis consistent with his innocence, it is quite as much the duty of the jury to convict as it is where witnesses testify positively to the facts charged in the accusation.   The government relies upon these facts:   It is in evidence that an illicit distillery was found upon the premises belonging to the defendant, within 300 or 400 yards of his house, with a plain beaten path or roadway from his house to the distillery; that the location of the distillery was such that, in the opinion of the witnesses, the defendant must have known that the distillery was there. It was situated, they say, in a narrow swamp.   There were no obstructions between the distillery and the residence of the defendant, save the fringe of the swamp in which the distillery was located.   Certain products of the distillery, it is stated, were found at the defendant's house, tending to show that he was connected with it.   A portion of the refuse of the distillery "slops," as the witness called it, were found in the hog-pen of the defendant, where the defendant's hogs had been fed and were being fed.   A worm and a cap, which are necessary parts of the distilling apparatus, were found in a crib near the defendant's house.   It is true, however, that it does not appear that the defendant had control of that crib.   It is in evidence, and not disputed, that the crib was under the control of one of the witnesses who was introduced, and was used by him

for his own purposes; that it was locked; and that witness carried the key to it. It is also in evidence that the lock was of a very simple make and construction, and could be easily opened; and it was readily opened by a simple instrument in the hands of one of the witnesses for the government. It is also in evidence on the testimony of that witness, who stated that he owned the crib or controlled it, that he didn't put this worm and cap in the crib, and that it was not there when he left the crib, and locked it that morning or the day before; and it is also in evidence that there was no other man on the premises except the defendant. Now, do these facts so distinctly point to the guilt of the defendant as to leave no other reasonable hypothesis save that of his guilt? You will probably look for a reasonable explanation of these circumstances, and, if you can find it, it is your duty to give the defendant the benefit of that doubt, and acquit him. But if, on your oaths as conscientious men, you feel it your duty to conclude that these facts unerringly and reasonably point to his guilt, and that there is no other reasonable explanation of them, it is your duty to convict him; and I charge you, further, that you will apply to this question the same rule with regard to reasonable doubt which you are authorized and required to apply to all charges of crime against a defendant.

If you find that there is a reasonable explanation of these criminatory circumstances consistent with the defendant's innocence, your labors will stop there, and it will be your duty to acquit the defendant; or if there is such a doubt as to whether or not there is a reasonable hypothesis consistent with his innocence, such a doubt as an ordinarily prudent man would act on or decline to act on, then it would be your duty to acquit the defendant. If, however, you find that these facts do point strongly to his guilt, under the rule I have given you, you will then advance to the next inquiry: Is he, in the opinion of the jury, upon the consideration of all the evidence in this case, a man of that degree of mental soundness that he is responsible for his actions?

Now, the defendant, through his counsel, sets up the plea that he is not legally responsible, on account of insanity; and upon that subject the burden of proof is on the defendant. As all men, for the purposes of society, are presumed to be innocent until proved guilty, so all men are presumed to be sane until the contrary is made to appear by proof; and it logically follows that the man who insists that he is insane has upon him the burden of proof to destroy that presumption to which I have called your attention, namely, that all men are presumed to be sane until the contrary is proved.

Will you be justified in concluding that this defendant is of unsound mind,—so unsound as to render him legally irresponsible for his criminal actions? To determine this you will likewise look to the evidence, and there is much evidence upon this subject. One witness, Mr. McKibben, a lawyer, testified that he had known the defendant since he (the witness) was a boy; that the defendant was "a perfect idiot." Another witness, Judge Anderson, testified that he had known the defendant; and that while he regards him capable of distinguishing, to a cer-

tain extent, right from wrong, yet he does not think that he possessed that degree of mental capacity which would enable him to know that it was wrong to carry on the business of an illicit distiller. Still another witness—another Mr. McKibbin—had known the defendant since boyhood; that the defendant had certain manias; that he had a mania on the subject of taking medicine; that he heard defendant say that he had for a time lived on a certain patent medicine; that another mania of the defendant was that the defendant took a whole bottle of calomel, (the witness did not state the size of the bottle, and whether it was large or small,) against the protest of those who witnessed the act, who said that to drink water would kill him, ran to the spring, and drank as much water as he could. The witness also spoke of the fact that the defendant, as a young man, was abnormally strong; that he would, at a log-rolling, with one hand pull down the most powerful negro man at the handspike, and the defendant would say at such times that one of his "spells" was on him. The defendant himself testifies. He does not say that he is insane, or even intimate that much; but he testifies that he is able to carry on his own business. It appears in evidence, also, that the defendant had a small farm; that he made all the contracts for its control and management. All of the witnesses agree that he is a man of good character; a man of integrity; and they say that they have never heard aught against him. The defendant tells you that he suffers from great sleeplessness, and he testifies on oath that he has not slept a moment for eight years and some months and some days.

Now, gentlemen, that is about all the evidence which has been submitted for your consideration, and upon which you must determine the question here involved. I charge you, gentlemen, that certain elements of insanity do appear in this evidence. For instance, the spasmodic possession of abnormal muscular strength, or unnatural physical power, is laid down by the works on medical jurisprudence as evidence of insanity; not conclusive, however. The characteristic of great wakefulness is an almost invariable attribute of insanity. There are certain other physical characteristics to which I think proper to call your attention in this connection; a deranged system; great constipation of the digestive organs; great restlessness; an abnormal bulging of the eye; a dryness about the same organ; a peculiar vacuous expression of the eye which bespeaks a vacant mind. These are all evidences of insanity. But there may be disorder of the mind and great eccentricity existing, which may nevertheless co-exist with a degree of responsibility and intelligence with regard to his actions which will make a man who suffers from that disorder or eccentricity responsible for violations of the law which he may commit. The rule may be fairly stated to be this: If he possesses that degree of mental intelligence which enables him to distinguish between right and wrong as to the particular matter or matters involved in the charge of crime for which he is on trial, he is held by the law responsible for his actions, notwithstanding he may have suffered generally from delusions, and that he may be the victim of manias on other subjects which do not affect or relate to the matter about which he is ac-

cused; and if you find from the evidence here that the defendant exhib-
its great eccentricity, and that he has a disordered mind on the sub-
ject of medicine, that he suffers from a mania on the subject of sleep,
nevertheless, if you believe from his testimony, and from the testimony
of all the witnesses, what they say about his reputation for integrity and
honesty, and the fact that he carries on his own business to a certain
extent, and, from the intelligibility of his testimony, that he is capable
of distinguishing between right and wrong in the matter of violation of
the internal revenue laws relating to illicit distilling, it will be your
duty to convict him, if you think him guilty otherwise.    You will ob-
serve that those men who have manias upon certain subjects, and yet
who are capable of distinguishing between right and wrong as to the
crimes they may commit, will be exceedingly dangerous men to society
if they are permitted by the courts of the country to escape because
they may be mentally disordered in other respects.    The test is a prac-
tical one, a reasonable one, and one which I am quite sure you under-
stand.    It is in this case the possession of that degree of mental sound-
ness which will enable the prisoner to distinguish right from wrong in
the matter of illicit distilling.    If so, it is your duty to find him guilty;
if not, it is your duty to acquit him.    And if you have a reasonable
doubt, which doubt is caused by the evidence, or the want of evidence,
on this point, it is your duty to give him the benefit of that doubt, and
acquit him.

I repeat that the burden of proof is on him to show insanity.    In that
connection it will be your duty to consider his remark when the revenue
officer came to his house, and informed him that they had found a still
on his place.    He said, "Who reported that distillery?"    You will also
look to his own manner of testifying, and his general bearing as a wit-
ness, and the intelligence and continuity of his testimony.    While highly
important, that is not an unerring test of mental capacity.    Many men
who were distinctly and decidedly insane have been able to converse
with great intelligence upon every other subject except that particular
subject upon which their insanity existed.    Very interesting instances
of these are found in the works of medical jurisprudence.    One particu-
larly interesting instance was cited by the great advocate, Erskine, on
the trial of Hadfield, charged with treasonable assault on George III.
There the plea of insanity was set up.    Erskine recalled a case where a
man had not only conversed with great intelligence, but had baffled the
most skillful interrogatories, by the most expert examiners, in their ef-
forts to show that he was insane, and the jury were about to render a
verdict against the keeper of the mad-house where this man insisted he
had been improperly confined, when the keeper came into court, and
directed that he be asked if he was the Lord and Savior of mankind;
and the witness immediately said: "Of course, I am the Christ."    Then
his insanity was clearly perceived.    Another case was likewise cited
by Lord Erskine where a man charged with insanity possessed appar-
ently like intelligence and ability to disconcert those who were exam-
ining him, until some reference was made to the princess who was in

love with him. He immediately declared that he was truly the object of her affection, and that she had been writing him letters in cherry juice.

These manias may or may not exist to that extent which will disorder the mind, and which will render a man irresponsible for his crime.

Now, clearly, from the testimony of the physician, this man suffers from a mania upon the subject of wakefulness. He himself testifies that he has not been asleep for eight years. Either he is dishonest in his statement, or is suffering under a mania in regard to that subject. The physician testifies that this is a physical impossibility. Now, does that mania, or other manias, so disorder his mind on other subjects that he is irresponsible as a criminal? If it is simply a mania on the subject of sleeplessness, and if he has intelligence sufficient to distinguish between right and wrong, particularly between right and wrong on the subject here involved, namely, that of illicit distilling, it would be your duty to convict him.

Something has been said about the punishment which, in case of conviction, the defendant would be subjected. With this subject you have nothing whatever to do. That is a matter entirely for the court, and I am sure you will feel that you can safely trust the court with that duty, in case you should find it your duty to convict. The question which you, by your oaths and by the law are to determine, is the question of the guilt or innocence of the accused, and you will frame your verdict under the rules and instructions I have given you, after your consideration of the evidence. Your verdict will be the usual verdict. If you find that the defendant committed the offense, and that he is responsible,—that he knows the difference between right and wrong in the matter of illicit distillation,—your verdict will be, "We, the jury, find the defendant guilty." If you find that the prosecution has failed on either of those propositions, your verdict will be, "We, the jury, find the defendant not guilty." Or, if you have a reasonable doubt, your verdict will be, "Not guilty." As you believe, gentlemen, from the evidence, so you will find. Retire and make up your verdict.